1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   FRED DWAYNE GILBERT,

11           Petitioner,              No. CIV S-02-2134 LKK DAD P

12       vs.

13   RICHARD RIMMER, et al.,

14           Respondents.            FINDINGS & RECOMMENDATIONS

15   _____/

16           Petitioner is a former state prisoner proceeding pro se with an application for a

17   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the judgment of

18   conviction entered against him in the Sacramento County Superior Court on charges of receiving

19   stolen property and attempted burglary.  He seeks relief on the grounds that: (1) he received

20   ineffective assistance of appellate counsel; (2) juror misconduct violated his right to a fair trial;

21   (3) there was insufficient evidence to support his conviction; (4) abuse of discretion by the trial

22   court violated his right to a fair trial; (5) prosecutorial misconduct violated his right to a fair trial;

23   (6) his right to due process and equal protection were violated when the trial court allowed him

24   to appear at trial in prison clothing; and (7) the cumulative effect of errors at his trial violated his

25   right to a fair trial.  Upon careful consideration of the record and the applicable law, the

26   undersigned will recommend that petitioner's application for habeas corpus relief be denied.

                                          1

PROCEDURAL AND FACTUAL BACKGROUND[1]

A jury convicted defendant Fred Dwayne Gilbert of receiving stolen property (Pen. Code, § 496, subd. (a); undesignated section references are to this code) and attempted vehicular burglary (§§ 664/459).  In bifurcated proceedings, defendant admitted two prior prison term allegations (§ 667.5, subd. (b)).  Another prior prison term allegation was dismissed.

* * *

About 1:00 a.m. on July 9, 1999, Megan Lee's Mercedes parked near 25th and P Streets in Sacramento was broken into and a car stereo was stolen.  Susan Reardon's Volkswagen parked nearby had its wing window broken out.  Reardon's friend saw defendant standing next to the Volkswagen and confronted him.  Defendant walked away and got into a car driven by Della Fort.  Fort's car was stopped by police two blocks from the scene.  Defendant was sitting in the passenger seat and underneath his seat officers found Lee's car stereo.

Defendant, in pro per, did not testify and presented no evidence.  In closing argument, he attacked the eyewitness's identification and suggested the car stereo had not been in his possession.

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

---

[1]  The following summary is drawn from the November 15, 2001, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-2, filed on October 27, 2003, as exhibit C to respondents' answer.

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

/////

/////

/////

3

II.  Petitioner's Claims[2]

    A.  Juror Misconduct

        Petitioner claims that juror misconduct deprived him of a fair trial.  The facts surrounding this claim are the following.  During petitioner's trial, the court clerk informed the trial judge that he had observed juror No. 12 put her arm around victim Megan Lee, pat her on the shoulder, and speak to her as they were walking out of the courtroom during a break. (Reporter's Transcript on Appeal (RT) at 226.)  The trial judge speculated that the juror, who was elderly, "had a moral instinct for a rather young woman here in court."  (Id.)  Petitioner asked for a dismissal on the grounds that the jury had been instructed not to converse with any of the witnesses during the pendency of the trial and that the contact between the juror and the victim violated "the concept of due process."  (Id. at 226-28.)  Subsequently, the trial court questioned Juror No. 12 outside the presence of the other jurors.  (Id. at 241.)  The following exchange ensued:

        THE COURT: At some time in the trial yesterday, we were taking a break, and the witness, the young woman Megan Lee was leaving the courtroom at the same time the jurors, were and it was noted that you entered into conversation with her and I don't know how long that conversation went on, but I, umm, I had advised the jurors that they should not talk to the witnesses.  Now, jurors are not automatons, and so things happen in this world with no bad intentions.  Did you – do you recall having some kind of contact with her as you were leaving the courtroom.

        JUROR (REDACTED): Yes, sir, I do.

        THE COURT: And what was the nature of the exchange of words?

        JUROR (REDACTED): Umm, her name was Megan Lee, and a lady who used to be a very close friend of mine had a daughter named Megan Lee and I asked her if she was Judy Lee's daughter.

        THE COURT: Okay.

/////

---

[2]  For purposes of overall clarity, the court will analyze petitioner's claims out of the order in which they were presented in the instant petition.

JUROR (REDACTED): And she said no, her mother was peg DeBlee (phonetic).

THE COURT: And that ended it?

JUROR (REDACTED): Yeah.

THE COURT: Okay.  I mean, it didn't continue out in the hallway and lead to anything further?

JUROR (REDACTED): No.  No.  It was just right here.

THE COURT: Okay.  Well, that's the only thing that was noted, was one of the attendants noted.

JUROR (REDACTED): I guess I was –

THE COURT: As you were leaving you were conversing.

JUROR (REDACTED): I guess I just didn't think about the fact that –

THE COURT: Well, it's a pretty innocent and understandable question to ask somebody.  So I just wanted to find out if there was, umm, something deeper or more involved where you recognized her as somebody you'd known or anything like that.

JUROR (REDACTED): No.

THE COURT: You don't recognize her and you were curious about the name.

JUROR (REDACTED): No, she was little when I saw her last, the Megan Lee, and this wasn't the same one.

THE COURT: All right.  And I take it there's nothing in that brief contact with her that would affect you how you evaluate the evidence in this case?

JUROR (REDACTED): No.

(Id. at 241-43.)  Both the prosecutor and petitioner declined to question Juror No. 12 further.  (Id. at 243.)

      Thereafter, petitioner again objected on the grounds that the juror's violation of the court's admonition not to talk to witnesses violated his due process rights and "prejudiced to the case."  (Id. at 244.)  The trial court declined to take any further action, ruling as follows:

1    Okay.  I think, umm, I think this is a rather innocent observation.  I
2    mean, while she's sitting here I'll assume that the name didn't ring
     a bell until she's sitting here and then it says my gosh, she's of the
     age that could be the daughter of this person I know.  If the person
3    turned out to be the daughter of the person she knows, I trust she
     would let us know: By the way, I have some contact with this
4    witness.  It turns out there was no connection.  And so I think the
     mere inquiry did not reflect any, umm, connection of these people,
5    anything that's been concealed from us, and I see no basis on
     which it could affect this juror's judgment.

6

7    (Id. at 245.)

8    　　　　Petitioner argues that the conduct of juror No. 12 violated his right to a fair trial.

9    He alleges that the juror improperly spoke with the victim in violation of the trial court's

10   instruction and deliberately concealed during voir dire that she recognized the victim's name.

11   　　　　Petitioner's claim of juror misconduct was raised for the first time in his

12   application for a writ of habeas corpus filed in the California Superior Court.  (Answer, Ex. E.)

13   The Superior Court rejected petitioner's claim, reasoning as follows:

14   Petitioner claims that the court clerk had reported to the superior
     court that Juror #11 had her arm around the victim Megan Lee and
15   had a conversation with the victim.  Petitioner claims that Juror
     #11 was then questioned by the court at a hearing, and that Juror
16   #11 explained that she had a friend with the same last name as the
     victim, whose daughter Juror #11 used to babysit, and that Juror
17   #11 thought that the victim was that daughter.  Juror #11 explained
     to the court that that was why she initiated the conversation with
18   the victim, to determine if this was so, and that the victim told her
     "no" in response.  Petitioner claims that the court found it to be
19   merely a "motherly daughterly type situation," and refused to
     declare a mistrial or to dismiss Juror #11 from the panel.
20   Petitioner claims that Juror #11 not only committed misconduct in
     engaging in the contact, but that she had also committed
21   misconduct in concealing her seeming recognition of the victim's
     name during voir dire when asked if the name of any victim
22   sounded familiar.  Petitioner claims that he made numerous but
     unsuccessful attempts to have his appellate counsel add this issue
23   to his appeal.

24   Petitioner fails to attach a copy of the pertinent part of trial
     transcript to support his claim (see In re Harris (1993) 5 Cal.4th
25   813, 827 fn. 5).  Without attaching the pertinent part of trial
     transcript, this court cannot assess the merits of his claim.  Indeed,
26   petitioner may even be confusing which juror was at issue, since

6

the minute order from the October 6, 1999 day of trial indicates
that Juror #12, not Juror #11, "was summoned into the courtroom
and questioned regarding her exchange with" the victim, "which
turned out to be non-prejudicial."  Further, petitioner's appellate
attorney thought there was no merit to the claim, as evidenced by
his letter to petitioner, attached as Exhibit W, stating "As far as
your concern over including the juror issue in the Opening Brief or
in a Supplemental Brief, I have already explained to you my
reasoning in previous correspondence.  I simply do not believe the
issue is legal [sic] viable.  It has no merit, and I will not raise it."
Since the matter was brought to the trial court's attention at the
time it occurred, and the trial court appears to have assessed the
situation then and dispelled any potential prejudice that there may
have been, which probably was none since the victim turned out
not to be the person Juror #12 thought she might have been, and
petitioner, in failing to attach a transcript of the proceeding, fails to
show otherwise, the claim is denied.

(Answer, Ex. F at 1-2.)[3]

Petitioner is not entitled to federal habeas relief with respect to this claim.  "Any

unauthorized communication between a juror and a witness or interested party is presumptively

prejudicial, but the government may overcome the presumption by making a strong contrary

showing."  Caliendo v. Warden of California men's Colony, 365 F.3d 691, 694 (9th Cir.) (citing

Mattox v. United States, 146 U.S. 140, 142 (1892)), cert. denied 543 U.S. 927 (2004).  See also

Remmer v. United States, 347 U.S. 227, 228 (1954).  "[I]f an unauthorized communication with

a juror is de minimus, the defendant must show that the communication could have influenced

the verdict before the burden of proof shifts to the prosecution . . . [and] must offer sufficient

evidence to trigger the presumption of prejudice."  Caliendo, 365 F.3d at 696 (internal quotations

omitted).  If a communication is not de minimus, prejudice is presumed and the defendant is

/////

---

[3] The Superior Court analyzed all of petitioner's claims in the context of deciding his
claim that he received ineffective assistance of appellate counsel.  (Id.)  The Superior Court
concluded, in essence, that because none of petitioner's individual claims had merit, appellate
counsel was not ineffective in failing to raise them on appeal.  (Id.)  All of the claims raised in
petitioner's application for a writ of habeas corpus filed in the California Superior Court were
summarily denied by the California Court of Appeal and the California Supreme Court on habeas
review.  (Answer, Exs. H, J.)

1    entitled to a new trial "unless the prosecution shows that there is no reasonable possibility that

2    the communication will influence the verdict." Id.

3              After a review of the state court record, this court concludes that the contact that

4    occurred here between juror No. 12 and the witness Ms. Lee was de minimus and could not have

5    influenced the verdict. Factors relevant to this inquiry include "the length and nature of the

6    contact, the identity and role at trial of the parties involved, evidence of actual impact on the

7    juror, and the possibility of eliminating prejudice through a limiting instruction." Caliendo, 365

8    F.3d at 697-98. The contact that occurred at petitioner's trial was short in duration and did not

9    involve matters crucial to the verdict. Although Megan Lee was the victim in this case, she did

10   not see who broke into her car and was not in a position to identify anyone as the perpetrator.

11   (RT at 141-160.) There is no evidence that the juror's brief conversation with the victim had any

12   actual impact on any juror. Juror No. 12 stated the incident would have no impact on her

13   deliberations and there is no evidence the other jurors even noticed the event. Finally, the trial

14   court instructed the jurors, reminding them of their obligation to decide all questions of fact from

15   the evidence received at trial (Clerk's Transcript on Appeal (CT) at 380), and advised them not to

16   be influenced by sentiment, sympathy or prejudice. (Id. at 376.) The jury is presumed to have

17   followed these instructions. Penry, 532 U.S. at 799; Richardson v. Marsh, 481 U.S. 200, 211,

18   (1987); McKenzie v. Risley, 842 F.2d 1525, 1533 (9th Cir. 1988).

19             Even assuming arguendo that the contact between juror No. 12 and the victim was

20   more than de minimus and triggered a presumption of prejudice, based upon the inquiry of the

21   juror conducted by the state trial judge, this court concludes that there is no reasonable possibility

22   this brief contact influenced the jury's verdict. Caliendo, 365 F.3d at 697. For all of the reasons

23   expressed above, the incident was simply too inconsequential to rise to the level of a federal

24   constitutional violation.

25             Finally, petitioner's argument that Juror No. 12 answered falsely during voir dire

26   when she failed to inform the court that she recognized the victim's name is based on pure

8

1   speculation and should be rejected.  As explained by the state trial court, there is no evidence that

2   juror No. 12 recognized the victim's name at the time of jury voir dire.

3           For all of these reasons, petitioner is not entitled to relief on his claim of juror

4   misconduct.

5       B.  Sufficiency of the Evidence

6           Petitioner was charged with a violation of California Penal Code § 496(a)

7   (receiving stolen property), which provides as follows:

8           Every person who buys or receives any property that has been
            stolen or that has been obtained in any manner constituting theft or
9           extortion, *knowing* the property to be so stolen or obtained, or who
            conceals, sells, withholds, or aids in concealing, selling, or
10          withholding any property from the owner, *knowing* the property to
            be so stolen or obtained, shall be punished by imprisonment in a
11          state prison, or in a county jail for not more than one year.
            (emphasis added.)

12

13  (CT at 349.)  Petitioner was also charged with a violation of California Penal Code § 664/459

14  (attempted burglary).  California Penal Code § 459 provides, in pertinent part, as follows:

15          Every person who enters any . . . vehicle as defined by the Vehicle
            Code, when the doors are locked . . . with intent to commit grand
16          or petit larceny or any felony is guilty of burglary.

17  Id.  Petitioner claims that the evidence introduced at his trial was insufficient to demonstrate "the

18  element of (knowingly) and (knowledge)."  (Fourth Amended Petition (Am. Pet.) at 6.)

19          Petitioner raised this claim for the first time in an application for a writ of habeas

20  corpus filed in the Sacramento County Superior Court.  (Answer, Ex. E.)  The Superior Court

21  rejected petitioner's arguments, reasoning as follows:

22          The third issue is whether the evidence was insufficient to support
            the element of knowledge.  This claim is rejected, as the evidence
23          clearly showed that petitioner was standing right next to a second
            car, the window of which had just apparently been broken, then got
24          into another car that was stopped two blocks away, where he was
            found to be in the passenger seat with the car stereo from the first,
25          nearby car broken into found right underneath where he was
            sitting.  The reasonable inferences from this evidence was that
26          either petitioner himself had broken into the first car and stolen the

9

1   stereo from it, or had been with another person who had done that
2   and then gotten in the waiting car after attempting to break into the
    second car, knowing that property had been stolen from the first
    car.  That the stereo stolen from the first car was found right under
3   the seat that petitioner was sitting in also gave rise to the
    reasonable inference that petitioner had either put it there himself
4   after stealing it, put it there himself after being handed it by another
    person who had taken it, or had seen it being placed under the seat.
5   Petitioner claims that his accomplice had testified that petitioner
    did not put anything in her car and that she had picked him up in
6   front of his residence before being stopped by police, showing he
    was not even there at the crime scene.  However, as noted by the
7   Third District Court of Appeal, another witness saw him standing
    right next to the second car at the time its window was broken,
8   which could have been rationally believed by a juror over the
    accomplice's testimony.  The evidence was more than sufficient to
9   show the element of knowledge.  The claim, therefore, is denied.

10   (Answer, Ex. F at 2-3.)

11          The Due Process Clause of the Fourteenth Amendment "protects the accused

12   against conviction except upon proof beyond a reasonable doubt of every fact necessary to

13   constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There

14   is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

15   favorable to the prosecution, any rational trier of fact could have found the essential elements of

16   the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also

17   Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question

18   under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond

19   a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,

20   443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when

21   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

22   process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005), cert. denied, ___ U.S.

23   ___, 126 S. Ct. 1142 (2006).  In order to grant the writ, the habeas court must find that the

24   decision of the state court reflected an objectively unreasonable application of Jackson and

25   Winship to the facts of the case.  408 F.3d at 1275 & n.13.

26   /////

1          The court must review the entire record when the sufficiency of the evidence is

2    challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

3    vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

4    the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

5    reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

6    fact could draw conflicting inferences from the evidence, the court in its review will assign the

7    inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

8    relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

9    the jury could reasonably arrive at its verdict.  Drayden v. White, 232 F.3d 704, 709 (9th Cir.

10   2000), cert. denied 532 U.S. 984 (2001); United States v. Mares, 940 F.2d 455, 458 (9th Cir.

11   1991).  "The question is not whether we are personally convinced beyond a reasonable doubt.  It

12   is whether rational jurors could reach the conclusion that these jurors reached."  Roehler v. Borg,

13   945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines the sufficiency of the

14   evidence in reference to the substantive elements of the criminal offense as defined by state law.

15   Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

16          The state court's conclusion that there was sufficient evidence presented at trial to

17   establish the element of knowledge is not erroneous under the federal standards set forth above,

18   nor is it contrary to or an unreasonable application of federal law or based on an unreasonable

19   determination of the facts.  Notwithstanding any exculpatory evidence, there was substantial

20   evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that

21   petitioner was guilty of receiving stolen property and attempted burglary of a vehicle and,

22   specifically, that he knew the car stereo found in his vehicle was stolen.  As explained above, the

23   fact that there was evidence supporting petitioner's version of the events is not dispositive.

24   Because there was substantial evidence presented at trial to support petitioner's convictions, the

25   state court's analysis of this claim is not "objectively unreasonable."  Woodford v. Visciotti, 537

26   /////

1   U.S. 19, 25 (2002).  See also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to

2   relief on this claim.

3         C.  Prosecutorial Misconduct

4              Petitioner claims at his trial that the prosecutor committed misconduct when he

5   "expressed his own personal opinion and belief to the credibility of government witness Della

6   Forts and exposed to the jury panel the past criminal history of [petitioner.]" (Am. Pet. at 6A.)

7   Petitioner also claims that the prosecutor: (1) improperly induced Ms. Fort to concede during her

8   direct examination that she had exercised her Fifth Amendment right to remain silent prior to

9   receiving immunity from the government; and (2) made an improper closing argument to the jury

10  during which he expressed his personal belief that petitioner was guilty, engaged in improper

11  "vouching," and questioned the credibility of Ms. Fort.  (Traverse, Attach. entitled "D. The

12  Prosecution Committed Misconduct" at 23-24.)  Petitioner does not cite to any portion of the

13  state court record in support of these claims.

14             Petitioner's claim of prosecutorial misconduct was raised for the first time in his

15  application for a writ of habeas corpus filed in the California Superior Court.  (Answer, Ex. E.)

16  The Superior Court rejected the claim, reasoning as follows:

17             The fourth issue is whether the prosecutor committed prejudicial
               misconduct, in commenting on the accomplice's credibility and
18             "exposing" to the jury the fact that she was testifying under a grant
               of immunity.  Again, however, petitioner fails to attach a copy of
19             pertinent trial transcript to support this claim, to show that this
               actually occurred and that petitioner in fact objected to the
20             comments at the time.  Without such reasonably available
               documentary evidence attached to support the claim (Harris,
21             supra), the claim is denied.  Moreover, petitioner fails to show that
               if either occurred, that either was error of any kind at all, requiring
22             denial of the claim.

23  (Answer, Ex. F at 2-3.)

24             A defendant's due process rights are violated when a prosecutor's misconduct

25  renders a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).

26  However, such misconduct does not, per se, violate a petitioner's constitutional rights.  Jeffries v.

Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden, 477 U.S. at 181 and Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)).  Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).  See also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Turner v Calderon, 281 F.3d 851, 868 (9th Cir. 2002).  Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. Johnson, 63 F.3d at 930 (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also Darden, 477 U.S. at 181-83; Turner, 281 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

### 1.  Witness Fort's Assertion of Her Fifth Amendment Privilege

Petitioner claims that the prosecutor committed misconduct when he elicited from Ms. Fort a concession on direct examination that she had exercised her Fifth Amendment right to remain silent prior to receiving immunity from the government.  The background to this claim was described by the California Court of Appeal as follows:

> Prior to Fort's testimony, the court inquired outside the presence of the jury whether Fort planned to assert her privilege against self-incrimination.  Fort stated she would assert her Fifth Amendment privilege.  The prosecutor granted her use immunity and the court approved.  The court then informed Fort she would be required to testify but that nothing she said could be used against her regarding the events of July 8 and 9, 1999.  The prosecutor requested the court instruct defendant not to mention that Fort had asserted her Fifth Amendment privilege and only allow her to be questioned about her testifying under a grant of use immunity.  The following discourse ensued:
>
> "THE COURT: Okay, the Defendant is not to question her about whether she has taken the Fifth Amendment.  You can question her and determine and bring out the fact that she has been granted a form of immunity for her testimony, that she can – that this witness, that her testimony may not be used against her.

"[DEFENDANT]: That this witness came in here, stated she took the Fifth Amendment, that is a fact and I can bring it out in front of the jury or anyone else.

"THE COURT: That is so obviously and totally incorrect.  It is incredible your sister courts have uniformly and consistently in lots of cases said if the witness is going to take the Fifth Amendment and not testify at all, then the jury never sees or hears any of that process.

"[DEFENDANT]: This witness chose to take the Fifth Amendment an[d] not testify in this courtroom.

"[THE PROSECUTOR]: Your Honor, I will withdraw it.  That's okay.  I'll withdraw that whole issue.  That's fine.
"THE COURT: Okay.

"[THE PROSECUTOR]: Just to move this."

When Fort was called to testify by the prosecution, she was asked on direct whether she knew someone had put a stolen car radio in her car.  She denied knowing anything about it, volunteering that she had had "enough encounters" with the police to know better.  The prosecutor then asked about her prior convictions.

"Q. [THE PROSECUTOR:] And you did it again and you got a petty theft with a prior conviction?

"A. [THE WITNESS:] Uh-huh.  But that didn't send me to the prison.  Drugs did.

"[DEFENDANT]: I'm going to object to the district attorney impeaching the witness after offering this witness immunity.

"THE COURT: Objection's overruled.  Any witness is subject to impeachment relating to criminal convictions.

"[DEFENDANT]: Just as any witness can take the Fifth Amendment.

"THE WITNESS: I tried."

The prosecutor also asked Fort whether she had responded to a subpoena.  She admitted that she did not appear but explained she "just got out of jail."

"Q. Okay.  But when you were subpoenaed, the process server told you what it was about?

"A. No, the process server told me nothing what he did, he came back and lied to the rest of the courts and told them she said she

wasn't going to come anyway.  That's what your processor told.
That is – that's what he did.

"Is he in this courtroom now?

"Q. No?

"A. Exactly.

"Q. Okay.  Miss Fort, but you didn't show up for court, right?

"A. No, I didn't.  And I had [a] very good reason.  It's not to
showing up.  I had a doctor's appointment.  My daughter was six,
and I am pregnant.

"Q. One of the other reasons was you didn't want to testify about
what happened that night, isn't that right?

"A. I thought if you didn't want to testify you could come in on
your subpoena and say you plead the Fifth, because this isn't a
capital crime and they would leave you alone; am I correct.

"Q. No, you are not correct, but you did plead the Fifth to this [sic]
afternoon, didn't you?

"A. Yeah, but I'm saying am I correct or not, if you don't want to
testify there's a way to go around not having anything to do with it;
am I correct?  I do not live in your neighborhood, I live in a very
bad neighborhood.  People don't take kindly to people coming
against anybody.  Especially not your relatives.

"Q. Okay.  All right?

"A. Are you going to move me and my kids?

"THE COURT: That's enough, Miss Fort, we don't get to ask too
many questions.

"THE WITNESS.  Okay.  Neither does he.

"Q. [THE PROSECUTOR]: Miss Fort, when you did come in this
afternoon you didn't want to testify?

"A. No, I didn't.

"Q. In fact, I had to give you what we call use immunity so that
you could testify today, right?

"A. Whatever that is.

"Q. Well, the Judge explained it to you?

15

1  "A.  Yes, he did.

2  "Q.  And do you understand it?

3  "A.  Yes, I do, that nothing that I say will incriminate me here.

4  "Q.  Right.  Can't be used against you, whatever you say today?

5  "A.  Right.  No matter how many petty thefts I have."

6  Fort explained that she had been waiting for defendant in her car
   parked in the area where the car break-ins occurred.  She gave
7  away all the clothes defendant had left in a duffle bag in her car.
   She admitted telling the police she picked defendant up to drive
8  him to her mother's house and was pulled over by the police.
   When asked whether she assumed defendant was innocent of the
9  crime the officer arrested him for, Fort started complaining that the
   prosecutor only brought up "all the bad points about [her]" and did
10 not ask her about "any good things about [her]" claiming that she
   had had many jobs after her release from prison.

11
   Defendant interjected:
12
   "THE DEFENDANT: I object to the fact this witness came in to
13 take a Fifth Amendment.  You guys have made this witness a
   hostile witness in this courtroom without the righteous
14 understanding of what immunity truly is.  This witness is not
   understanding that basically she can admit to this crime and that
15 nothing could be done against her.

16 "THE COURT: Well, sir, you are confusing a number of principles
   here.  And the most important point --
17
   "THE DEFENDANT: You are confusing --
18
   "THE COURT: Just a moment.  The most important point is if
19 there's some legal – as to the legal issue you're raising, you've
   already raised it.  I've ruled on it, and we're going to continue with
20 the testimony of this witness and you will cease your discussion.

21 "THE DEFENDANT: Excuse me.  I don't understand what the
   ruling was.
22
   "THE COURT: You will – what?
23
   "THE DEFENDANT: What was the ruling?  This witness asked to
24 take the Fifth Amendment.

25 "THE COURT: Just a second, sir.  I have ruled there are legal
   issues that are settled in the absence of the jury, and we're not
26 /////

1    going to rehash them in the presence of the jury and cause some
     confusion or misunderstanding.

2    "Now I have ruled.  And if you want some further ruling --

3

4    "THE DEFENDANT: I'd just like to object to the fact that the
     witness has become a hostile witness.

5    "THE COURT: Your objection has been noted --

6    "THE DEFENDANT: Thank you.

7    "THE COURT:  – numerous times.  Okay."

8    (Opinion at 9-14.)  (See also RT at 404-07, 442-43.)

9           Under the circumstances of this case, the prosecutor's reference to Ms. Fort's

10   assertion of the Fifth Amendment did not result in actual prejudice to petitioner, nor did it have a

11   substantial and injurious effect or influence on the jury's verdict.  It appears clear from the state

12   court record that petitioner was determined to inform the jury that Ms. Fort had asserted her Fifth

13   Amendment privilege.  He succeeded in doing so on several occasions.  The prosecutor's

14   cumulative reference to the same subject was not improper or prejudicial.  As explained by the

15   California Court of Appeal:

16          The court never specifically instructed defendant not to mention
            the privilege.  Although the prosecutor at first requested that the
17          court so instruct defendant, the prosecutor withdrew his request
            when defendant insisted on bringing Fort's assertion of the
18          privilege before the jury.  While it is obvious defendant did not
            want Fort to testify at all, defendant's statements to the jury as well
19          as Fort's answer highlighted the fact she had asserted her Fifth
            Amendment privilege before the prosecutor mentioned her
20          assertion of the privilege in clarification of her answer.  When the
            prosecutor asked his clarification question, the rule prohibiting
21          comment on the assertion of the privilege to preclude the jury from
            speculating why Fort had asserted the privilege had already been
22          ignored by defendant.  Thus, defendant suffered no adverse
            consequences when the prosecutor asked his clarification question.
23          Further, the trial court cannot be faulted for allowing the
            prosecutor's clarification question in view of defendant's previous
24          statement to the jury that Fort had earlier asserted the Fifth
            Amendment.  Moreover, even assuming the trial court had stricken
25          the clarification question and admonished the jury, defendant later

26   /////

                                          17

1    further highlighted Fort's assertion of the Fifth Amendment
     privilege when he again objected.  We find no error.

2

3    (Opinion at 17-18.)

4    The undersigned agrees with the state appellate court's analysis.  Petitioner has

5    demonstrated neither prosecutorial misconduct not actual prejudice stemming from the

6    prosecutor's examination of Ms. Fort.  Accordingly, petitioner is not entitled to relief on this

7    claim.

8    2.  Closing Argument

9    Petitioner argues that the prosecutor committed misconduct during his closing

10   argument to the jury when he stated that petitioner "committed said crimes," made negative

11   comments regarding the credibility of prosecution witness Della Fort, and engaged in improper

12   "vouching." (Traverse, Attach. entitled "D.  The prosecution committed misconduct" at 22-24.)

13   In order to determine whether a prosecutor engaged in misconduct during closing

14   argument, it is necessary to examine the entire proceedings and place the prosecutor's remarks in

15   context.  See United States v. Robinson, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must

16   be examined in context. . . ."); Greer, 483 U.S. at 765-66; Donnelly, 416 U.S. at 647 ("[A] court

17   should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging

18   meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the

19   plethora of less damaging interpretations."); Williams v. Borg, 139 F.3d 737, 745 (9th Cir.

20   1998).  In fashioning closing arguments, prosecutors are allowed "reasonably wide latitude,"

21   United States v. Birges, 723 F.2d 666, 671-72 (9th Cir. 1984), and are free to argue "reasonable

22   inferences from the evidence."  United States v. Gray, 876 F.2d 1411, 1417 (9th Cir. 1989).  See

23   also Ducket v. Godinez, 67 F.3d 734, 742 (9th Cir. 1995).

24   After a careful review of the prosecutor's closing argument, this court finds no

25   evidence of misconduct.  Although the prosecutor suggested that Ms. Fort was "lying" in her

26   testimony in order to mask her own culpability (RT at 539), he was entitled to argue this

18

1  reasonable inference from the evidence.  See Dubria v. Smith,  224 F.3d 995, 1004 (9th Cir.

2  2000) (prosecutor's reference to defense argument as "a piece of garbage" and defendant as "a

3  liar" found not to be improper), cert. denied 531 U.S. 1148 (2001); United States v. Molina, 934

4  F.2d 1440, 1445 (9th Cir. 1991)  (where versions were in direct conflict, prosecutor's statement

5  in argument that one side was lying was unavoidable and not improper); United States v. Laurins,

6  857 F.2d 529, 539 (9th Cir. 1988) (statement that defendant was a liar could be construed as a

7  comment on the evidence and therefore permissible).  Here, the prosecutor merely argued that it

8  was  petitioner who had committed the charged crimes based on the evidence introduced at trial.

9  (See e.g., RT at 556, 562-63, 569.)  This argument was entirely proper and did not constitute

10  prosecutorial misconduct.

11       "As a general rule, a prosecutor may not express his opinion of the defendant's

12  guilt or his belief in the credibility of government witnesses."  Molina, 934 F.2d at 1444.  It is

13  improper vouching for the prosecutor to offer personal assurances of the veracity of government

14  witnesses or to suggest that their testimony is supported by evidence not introduced at trial.  See

15  id. at 1445.  Petitioner provides no citations to the record to support his contention that the

16  prosecutor disclosed petitioner's prior convictions, expressed his personal belief in the credibility

17  of the evidence or of any witness, or improperly vouched for the credibility of any witness.

18  Nonetheless, the undersigned has reviewed the prosecutor's closing argument in its entirety.

19  (See RT 531-572, 576-578.)  Nowhere in his closing arguments to the jury did the prosecutor

20  improperly disclose petitioner's prior criminal convictions or improperly vouch for the credibility

21  of any witness.  The prosecutor's closing argument was proper and did not render petitioner's

22  trial fundamentally unfair.  Accordingly, petitioner is not entitled to relief on his claim of

23  prosecutorial misconduct.

24       D.  Abuse of Discretion by the Trial Court

25       Petitioner raises numerous claims alleging abuse of discretion by the state trial

26  court.  This court will evaluate these claims in turn below.

1       1.  <u>Evidentiary Rulings</u>

2               Petitioner claims that the trial judge committed misconduct when he "ruled a

3   constitutional violation harmless and allowed petitioner's past criminal history to be exposed to

4   the jury." (Am. Pet. at 6.)  In his traverse, petitioner claims that the trial court erred in denying

5   his motion for new trial based on insufficient evidence and improperly denied petitioner's motion

6   for discovery to support the motion for new trial.  (Traverse, Attach. entitled "Trial Courts (sic)

7   Abused it Discretion" at page four (B-1) - B-2.)  Petitioner provides no citation to the record in

8   support of these claims and they should be rejected on that basis.  <u>See</u> <u>Jones v. Gomez</u>, 66 F.3d

9   199, 204 (9th Cir. 1995) (quoting <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994)) ("'[c]onclusory

10  allegations which are not supported by a statement of specific facts do not warrant habeas

11  relief'").

12              In any event, petitioner has failed to demonstrate that any evidentiary ruling by the

13  trial court violated his federal constitutional rights.  <u>See</u> <u>Drayden v. White</u>, 232 F.3d 704, 710

14  (9th Cir. 2000) (a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

15  relief only if it renders the state proceedings so fundamentally unfair as to violate due process);

16  <u>Spivey v. Rocha</u>, 194 F.3d 971, 977-78 (9th Cir. 1999) (same); <u>Jammal v. Van de Kamp</u>, 926

17  F.2d 918, 919 (9th Cir. 1991) (same).  Petitioner's arguments in this regard reflect nothing more

18  than mere disagreement with the trial court's rulings.  Accordingly, petitioner is not entitled to

19  relief on this claim.

20      2.  <u>Jury Issues</u>

21               Petitioner also claims that the trial judge "allowed jurors to give false answers

22  during voir dire and undermined the jury selection process." (Am. Pet. at 6.)  As discussed

23  above, there is no evidence the trial judge allowed any juror to provide false answers during voir

24  dire or, indeed, that any juror gave false answers.  It appears that this claim is based upon

25  petitioner's allegations with respect to Juror No. 12 which have been addressed in detail above.

26  /////

1   After a review of the record, this court concludes that the trial judge did not err in his handling of

2   the issues concerning juror No. 12.

3                  3.   <u>Comment on Della Fort's Testimony</u>

4                  Petitioner claims that the trial judge committed prejudicial error when he

5   commented in front of the jury that prosecution witness Della Fort was being deliberately

6   forgetful on the witness stand.  (Traverse, Attach. entitled "The Prosecution Committed

7   Misconduct" at 23.)  The state court record reflects that the trial judge made the following

8   remarks during Ms. Fort's testimony:

9       Q. (By the prosecutor): What were your hours at that place you
    were working?

10

11      A.  I don't remember.

12      Q.  Because you would have been working the next day on Friday,
    right?

13      A.  No.

14      Q.  You had Fridays off?

15      A.  I don't remember.

16      THE COURT: Miss Fort, you're making no – it appears you're
    making no effort to remember.

17

18      THE WITNESS: He's not making any effort to just – I mean to ask
    sensible questions.  He's going to sit here and ask me am I
    burglarizing cars.  I come in here – why ain't I sitting over there?

19

20      THE COURT: He can ask you – a question is not evidence.  A
    question only poses a question to a witness.  The answer –

21      THE WITNESS: Your Honor –

22      THE COURT: The answer is the evidence.  He can ask a question,
    and you can say that's not true, as you have.

23

24      THE DEFENDANT: That's badgering the witness.

25      THE COURT: The question is not testimony.

26      THE WITNESS: Okay.

1    THE COURT: It does not prove anything.

2    THE WITNESS: Your Honor, you know I prefer not to be in this
     seat right now.  I really do.  So please can we just get this over
3    with.

4    THE COURT: Well, if you will make some effort to remember –

5    THE WITNESS: I am.

6    THE COURT:  – and answer questions –

7    THE WITNESS: I am.

8    THE COURT: we'll get it over with.

9    (RT at 425-26.)

10           Petitioner's arguments in this regard were raised for the first time in an

11   application for a writ of habeas corpus filed in the California Superior Court.  (Answer, Ex. E.)

12   The Superior Court rejected those arguments with the following reasoning:

13           The second issue is whether the superior court made statements to
             the jury that biased and tainted the verdict, in stating to the jury
14           that petitioner's accomplice appeared to have forgotten everything
             when she testified.  Petitioner, however, fails to attach a copy of
15           pertinent trial transcript to support this claim, to show that this
             actually occurred and that petitioner in fact objected to the
16           comment at the time.  Without such reasonably available
             documentary evidence attached to support the claim (Harris,
17           supra), the claim is denied.

18   (Answer, Ex. F at 2.)

19           On direct appeal in federal court, the standard for reversal based on general

20   judicial misconduct is stringent – there must be an "extremely high level of interference by the

21   trial judge which creates a pervasive climate of partiality and unfairness."  Duckett v. Godinez,

22   67 F.3d 734, 740 (9th Cir. 1995) (internal quotations omitted).  On habeas, the standard is even

23   more stringent: relief is warranted only if "the state trial judge's behavior rendered the trial so

24   fundamentally unfair as to violate federal due process. . ."  Id.  The trial judge's remarks to Ms.

25   Fort were not gratuitous, but came after the witness gave several evasive answers in response to

26   questioning.  Under the circumstances, the trial judge's reminder to the witness that she could not

                                              22

be deliberately forgetful, and his implication that she had a duty to answer questions on direct examination to the best of her ability, did not render petitioner's trial fundamentally unfair.  The state court's decision rejecting this claim is not contrary to or an unreasonable application of federal law and should not be set aside.  Accordingly, petitioner is not entitled to habeas relief on this claim.

E.  Prison Attire

Petitioner claims that his right to a fair trial was violated when the trial court allowed the jury to view him in prison clothing during his trial.  (Am. Pet. at 6A-6B.)  Petitioner states that the trial court "at no time during the course of the trial offered to give petitioner clothing."  (Id. at 6B.)  Respondents argue that petitioner "had no constitutional right to appear in civilian clothes, he fails to establish that he objected to appearing in jail issued clothing, and he fails to show that his jail attire was 'identifiable' as such.'"  (Answer at 20.)

Petitioner raised this claim on appeal in state court.  (Answer, Ex. C.)  The California Court of Appeal fairly described the relevant background as follows:

> Beginning at 9:40 a.m. on the first day of trial, the court considered in limine matters and several of defendant's recently filed motions.
>
> Prior to taking the morning recess at 11:40 a.m., the court asked:
>
> "THE COURT: . . . .
>
> "And now let me ask you this, sir: Do you have some clothes to wear when the jury is here?
>
> "THE DEFENDANT: I assume so, but if I don't I'm quite sure they'll find something and I'll put it on.
>
> "THE COURT: Well –
>
> "THE DEFENDANT: God will make a way.  I won't worry.
>
> "THE COURT: Sir, have you made any efforts to arrange to have some clothing here so you can appear in civilian clothing?
>
> "THE DEFENDANT: Yes, I have.
>
> "THE COURT: Where [is] your clothing, then?

1    "THE DEFENDANT: Well, if they're here, I don't know.  I
     haven't been called to put them on yet.

2
     "THE COURT: Is there some way – can our escort officer check
3    and see if there is clothing down there for this defendant?

4    "THE BAILIFF: I'm also the clothing officer, and I don't recall any
     clothing being down in the clothing room for [defendant].

5
     "THE DEFENDANT: Is it necessary that I have to wear clothing?

6
     "THE COURT: You mean civilian clothing?

7
     "THE DEFENDANT: Yes.

8
     "THE COURT: Do you want to appear in front of the jury?

9
     "THE DEFENDANT: It doesn't make a difference.  I doesn't make
10   a difference, Your Honor.  It doesn't make a difference.

11   "THE COURT: Does the clothing system have random clothes
     hanging around?

12
     "THE BAILIFF: No, sir, we do not.

13
     "THE COURT: That would be a pretty big order to have clothing
14   to fit all possible needs.
     "Well, sir, do you have family here in Sacramento?

15
     "THE DEFENDANT: Yes, I do, I have a mother here, but she's of
16   age, and I don't want to bother her with my burden.

17   "THE COURT: To bring down a pair of pants and a shirt?

18   "THE DEFENDANT: My mother is of age, and I wouldn't do that.

19   "THE COURT: Do you have any brothers or sisters?

20   "THE DEFENDANT: No.

21   "THE COURT: Uncles or aunts?

22   "THE DEFENDANT: Not that I would like to bring my burden on
     them.  I'm comfortable.  I'm okay.  I think it won't be of concern.

23
     "THE COURT: Well, I'm going to tell the jury that you're in these
24   clothes by your choice.  Because I don't want the jury to think that
     the system is making you stand trial in jail clothes.

25
     The afternoon session reconvened at 1:30 p.m. and the parties
26   continued to discuss defendant's motions and in limine matters.

                                    24

During discussions, the court again inquired:

"THE COURT: All right. And you want to proceed with the trial today with [sic] even though you don't have civilian clothes on?

"THE DEFENDANT: Yes.

"THE COURT: And you realize that we could make some efforts or your family could be contacted and try to get you some clothes?

"THE DEFENDANT: Not necessary.

"THE COURT: Not necessary. Okay."

At 3:30 p.m., a jury panel entered the courtroom and selection commenced.

Prior to the afternoon session of the third day of jury trial, defendant changed into civilian clothing.

(Opinion at 3-4.)

A defendant in a criminal case may not be compelled to appear in front of the jury wearing identifiable prison garb because it could impair the presumption of innocence. Estelle v. Williams, 425 U.S. 501, 503, 512 (1976); United States v. Rogers, 769 F.2d 1418, 1423 (9th Cir. 1985). A criminal defendant may choose, however, to dress in jail clothes. See Felts v. Estelle, 875 F.2d 785, 786 (9th Cir. 1989) (citing Williams, 425 U.S. at 508). "[The] failure to make an objection to the court as to being tried in such [identifiable prison] clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." Estelle, 425 U.S. at 512-13. Further, the decision whether to appear before the jurors in identifiable prison clothes as a matter of strategy or tactics "rests with the accused and his attorney." Id. at 512. Indeed, "it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." Id. at 508.

The California Court of Appeal found that petitioner was not forced to appear before the jury in jail garb, but chose to do so. (Opinion at 7-8.) The state appellate court noted that the trial judge offered to try and find clothing for petitioner and suggested that petitioner's family bring civilian clothes to the courthouse, but petitioner declined both suggestions. (Id.)

1  These findings are consistent with the state court record.  There is no evidence that petitioner was

2  compelled to proceed before the jury in prison attire.  On the contrary, he rebuffed all efforts to

3  help him obtain a change of clothing.  Under these circumstances, there was no violation of

4  petitioner's right to a fair trial.  Petitioner is not entitled to relief on this claim.[4]

5          F.  Ineffective Assistance of Appellate Counsel

6          Petitioner next claims that his appellate counsel rendered ineffective assistance by

7  failing to raise on appeal claims regarding juror misconduct, sufficiency of the evidence, and

8  abuse of discretion by the trial court (specifically, disclosure of petitioner's "past (sic) C.D.C.

9  incarceration").  (Am. Pet. at 2C-8.)[5]

10         The Sixth Amendment guarantees the effective assistance of counsel.  The United

11  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

12  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

13  counsel, a petitioner must first show that, considering all the circumstances, counsel's

14  performance fell below an objective standard of reasonableness.  See Strickland, 466 U.S. at

15  687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the

16  result of reasonable professional judgment, the court must determine whether, in light of all the

17  circumstances, the identified acts or omissions were outside the wide range of professionally

18  competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

19  petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

20

21         [4]  Respondents argue that petitioner has failed to demonstrate his prison attire was
    identifiable as such.  It is true that "a person seeking reversal of his conviction because he was
22  compelled to stand trial in prison garments must demonstrate from the trial record that a juror
    would recognize the clothing as having been issued by prison authorities."  United States v.
23  Rogers, 769 F.2d 1418, 1422 (9th Cir. 1985).  Here, the trial court initiated a conversation
    regarding petitioner's attire because he recognized that it was prison issue.  The state appellate
24  court simply assumed the petitioner was dressed in identifiable prison clothing.  Under these
    circumstances, this court will likewise assume that petitioner's attire was recognizable as having
25  been issued by prison authorities.

26         [5]  Although not entirely clear, petitioner may also be challenging the failure of his
    appellate counsel to raise on appeal petitioner's claims concerning prosecutorial misconduct.

1   466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

2   counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

3   694.  A reasonable probability is "a probability sufficient to undermine confidence in the

4   outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

5   (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

6   deficient before examining the prejudice suffered by the defendant as a result of the alleged

7   deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

8   sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

9   (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

10          The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

11   v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

12   However, an indigent defendant "does not have a constitutional right to compel appointed

13   counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

14   professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

15   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

16   ability of counsel to present the client's case in accord with counsel's professional evaluation

17   would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

18   Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and

19   is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

20   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

21   showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

22   to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to establish prejudice in this

23   context, petitioner must demonstrate that, but for counsel's errors, he probably would have

24   prevailed on appeal.  Id. at 1434 n.9.

25          Petitioner's appellate counsel apparently reviewed the trial transcripts and

26   concluded that petitioner's claims of juror misconduct, insufficiency of the evidence,

1   prosecutorial misconduct, and abuse of discretion by the trial court, none of which were raised on

2   direct appeal, lacked merit.  As described above, this court has reached the same conclusion.

3   Appellate counsel's decision to press only claims with arguably more merit was "within the range

4   of competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759,

5   771 (1970).  The California Superior Court denied this claim on the ground that petitioner had

6   failed to demonstrate prejudice stemming from any of appellate counsel's alleged errors.

7   (Answer, Ex. F.)  This determination is not contrary to, or an unreasonable application of

8   Strickland.  Accordingly, petitioner is not entitled to relief on this claim.

9          G.  Cumulative Error

10         Petitioner contends that errors at his trial, when considered cumulatively, deprived

11  him of a fair trial.  Where the cumulative effect of errors is so prejudicial that a defendant is

12  denied a fair trial, habeas relief may be warranted.  See United States v. Necoechea, 986 F.2d

13  1273, 1282-83 (9th Cir. 1993).  Petitioner has not established a denial of due process with respect

14  to any of his individual claims raised in the instant petition.  Likewise, considered in their

15  aggregate, those claims do not compel the finding of a due process violation.  Accordingly,

16  petitioner is not entitled to relief with respect to this cumulative error claim.

17                              CONCLUSION

18         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

19  a writ of habeas corpus be denied.

20         These findings and recommendations are submitted to the United States District

21  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

22  days after being served with these findings and recommendations, any party may file written

23  objections with the court and serve a copy on all parties.  Such a document should be captioned

24  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25  shall be served and filed within ten days after service of the objections.  The parties are advised

26  /////

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 15, 2006.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
gilbert2134.hc

29